UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

MARY BELL, Mother and Personal )
Representative of the Estate of )
Timothy U. Bell, )
 )
     Plaintiff, ) Civil Action No. 10-72-ART
 )
v. )
 ) **MEMORANDUM OPINION**
M. ZUERCHER, et al., ) **AND ORDER**
 )
     Defendants. )

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Timothy Bell, a prisoner at the U.S. Penitentiary-Big Sandy, knew something was wrong with the mass in his right underarm. But because he did not receive a biopsy, he did not know the mass was an early sign of the non-Hodgkin's lymphoma that would ultimately lead to his death. Before Bell passed away, he filed this lawsuit against nine Big Sandy officials for their deliberate indifference to his pleas for medical attention. His mother, Mary Bell, now carries on the suit in his name. The problem, however, is that Bell filed many of his claims too late. This Court must therefore grant summary judgment to some of the defendants.

### BACKGROUND

On July 3, 2008, Timothy Bell, a prisoner in the Big Sandy satellite work camp, noticed swelling, redness, and tenderness in his right underarm. R. 58 ¶ 6. Defendant Dr. Norbert Rosario examined Bell a week later and requested a biopsy of the mass. Rosario allegedly labeled the request "Priority!!!" *Id.* A month later,

1

Defendants Cruz and Sloane[1] granted the request and designated it a "Priority 1 - Mandatory (1-30) procedure." *Id.* ¶ 9. Yet nothing happened.

In December 2008, Bell informally met with defendant Alma Evans, a correctional counselor, for help. Still, nothing happened. *Id.* ¶ 10.

Nearly a year after Bell's initial examination—May 2009—he met with Defendant Dr. Daniel DeOliveira. DeOliveira also recommended a biopsy of the tumor. But still, nothing happened. *Id.* ¶ 11.

Two months later, on July 16, 2009, Bell sent an Inmate Request to Staff form, commonly called a "cop-out," to defendants Zuercher, Heffington, Linaweaver, and Batts—all supervisors at the Big Sandy satellite camp. Bell also attached a letter to his cop-out which detailed his problems seeking treatment, alerted the defendants to his suffering, and warned that he and his family feared he had cancer. *Id.* ¶ 12. On July 21, Zuercher responded, telling Bell that "the exam has been ordered and is pending scheduling." R. 68-2. Again, nothing happened for the remainder of the time Bell was at Big Sandy.

The Bureau of Prisons ("BOP") transferred Bell to the Federal Correctional Institution-Ashland on July 26, 2009, and in October 2009, Bell finally received a biopsy. R. 58 ¶ 13. By then, Bell had stage III to stage IV non-Hodgkin's lymphoma. R. 1. ¶ 7. Thereafter, Bell was released from BOP custody on November 10, 2009.

---

[1] These defendants' names are spelled "Curz" and "Slone" in the complaint, but "Cruz" and "Sloane" elsewhere.

2

On June 2, 2010, Bell filed a complaint alleging that the defendants violated his Eighth Amendment right against cruel and unusual punishment by deliberately failing to respond to his serious medical needs. R. 1. The defendants moved to dismiss the complaint, R. 27, but the Court was unable to rule on the motion based on the pleadings alone. The Court therefore held a telephone hearing on December 1, 2010. At the hearing, the Court authorized the parties to take limited discovery regarding the December 2008 meeting between Bell and Evans and the structure of the Big Sandy grievance process. R. 45. Later that month, Timothy Bell died from his illness. R. 47. His mother, Mary Bell, became the personal representative of his estate in July 2011 and filed an amended complaint. R. 58 ¶ 2.

Defendants Batts, Cruz, Evans, Heffington, Linaweaver, Rosario, and Sloane have now moved to dismiss the amended complaint on three grounds: (1) Bell did not exhaust his administrative remedies as required by the PLRA; (2) the statute of limitations bars Bell's claims; and (3) Bell's allegations do not state a claim against certain defendants. R. 67. Bell does not oppose dismissing his claims against Defendants Batts and Linaweaver. R. 68 at 7 n.1.

## DISCUSSION

I.  **Standard of Review**

Rule 12(b)(6) requires courts to evaluate motions to dismiss on the basis of the pleadings alone. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In this case, the Court ordered the parties to take limited discovery into Bell's participation in the Big Sandy grievance process. *See* R. 45. The parties have done so, and their briefing now presents the Court with facts outside of the pleadings. As a

3

result, the Court must treat the defendants' motion as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d). At the summary judgment stage, the defendants will prevail on all claims for which "there is no genuine issue as to any material fact" and the defendants are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, Bell must establish the essential elements of his claims in order to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The parties contemplated that the Court might convert the motion to dismiss into a motion for summary judgment. If dismissal were inappropriate, the defendants asked the Court to award them summary judgment for the same three reasons they argued in their motion to dismiss. R. 67-1 at 31-32. Bell argued in response that the defendants were not entitled to summary judgment. R. 68 at 7-8.

The Sixth Circuit has held that when a district court awards summary judgment *sua sponte* against a party, it should give that party ten days' notice and an adequate opportunity to respond. *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). Although it is debatable that summary judgment is truly "*sua sponte*" here, in an abundance of caution, Bell will have ten days to demonstrate why those claims that are herein dismissed should be allowed to go forward. Bell can do so by pointing to evidence already in the record or by filing an affidavit stating what facts additional discovery would reveal. *See* Fed. R. Civ. P. 56(d).

## II. Exhaustion of Administrative Remedies

First, the defendants argue that Bell's claims are barred because he failed to exhaust the prison system's administrative remedies before filing his complaint.[2] The Prison Litigation Reform Act (PLRA) does require prisoners to exhaust their administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e. But as many circuits have held, the exhaustion requirement only applies to prisoners who are in custody when they file their complaint. *See Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1150 (10th Cir. 2005) ("[T]he other circuits to have addressed the issue have unanimously held that it is the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies"); *Mabry v. Freeman*, 489 F. Supp. 2d 782, 785 (E.D. Mich. 2007) (citing cases); *see also Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003) (asking whether plaintiff was a prisoner "when [he] 'brought' his case"). After all, the "plain and unambiguous" language of the statute applies only to plaintiffs who are "prisoner[s] confined in a jail, prison, or other correctional facility" when the "action [is] brought." *Norton*, 432 F.3d at 1150. Thus, as this Court has held before, "the PLRA does not apply to former prisoners, even though the claim may have arisen while the plaintiff was previously incarcerated." *Dishman v. Corr. Corp. of Am.*, 2010 WL 3294679, at *5 (E.D. Ky. Aug. 20, 2010). Because Bell was no longer a prisoner when he started his lawsuit, the exhaustion requirements of the PLRA do not apply to him.

---

[2] During the December 1, 2010 telephone conference, counsel for the defendants agreed that the PLRA did not apply to Bell because he was not a prisoner when he filed suit. Nevertheless, the defendants have argued in their subsequent motion to dismiss that the Court should dismiss the complaint for failure to exhaust administrative remedies. R. 67-1 at 8-18; R. 70 at 2-11.

5

This case is different, the defendants insist, because Bell had plenty of time to complete the administrative process before being released—he filed grievances and thus should have followed through with the administrative process. This, too, is unconvincing. As another court held in *Calia v. Werholtz*, 408 F. Supp. 2d 1148, 1152 (D. Kan. 2005), the text of the PLRA says nothing about the defendants' proposed rule. It requires exhaustion only if the "prisoner [is] confined in any jail" at the time the civil action is "brought." 42 U.S.C. § 1997e(a). The defendants' position can boast scant support from the Sixth Circuit. In *Cox*, that court found that a prisoner who prematurely files suit, is released, and then sees his complaint dismissed for failure to exhaust can re-file his complaint anew as a free man. 332 F.3d at 425. Because Bell was no longer a prisoner when he began the litigation, the PLRA does not apply. He therefore did not have to exhaust his administrative remedies before filing suit.

### III. Statute of Limitations

Next, the defendants contend that the statute of limitations blocks Bell's claims. In Kentucky, plaintiffs have up to one year to bring a *Bivens* claim. Ky. Rev. Stat. 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). Each instance in which the defendants allegedly ignored Bell's request for medical attention was a discrete offense with its own new statute of limitations period. *See, e.g.*, *Bruce v. Corr. Med. Servs, Inc.*, 389 F. App'x 462, 2010 WL 2842736, at *4 (6th Cir. July 21, 2010) ("[A]ctions by CMS of refusing medical care represent discrete unlawful acts . . . that trigger the statute of limitations."). The statute of limitations for a civil rights offense begins to run once a plaintiff "kn[ew] or ha[d] reason to

6

know that the act providing the basis of his . . . injury occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). In this case, once Bell became "aware of the defendant[s'] denial of his request for medical treatment," *Monroe v. Lewis*, 165 F.3d 27, 1998 WL 537562, at *1 (6th Cir. Aug. 7, 1998) (unpublished table decision), his statute of limitations began to run. The statute of limitations therefore blocks Bell's claims against some, but not all, defendants.

    A.    **Claims inside the statute of limitations**

Several of the defendants' purported offenses occurred within the one-year period. On July 16, 2009, Bell sent a letter attached to a cop-out form to Defendant Zuercher, the warden of the Big Sandy satellite camp, and Heffington, the camp's executive assistant.[3] *See* R. 60-4; *see also* R-60-8 (blank example of a cop-out form); Evans Dep., R. 60-2 at 26. The letter detailed Bell's administrative difficulties and his need for medical attention. R. 60-4. Warden Zuercher responded on July 21, 2009, telling Bell that his exam "has been ordered and is pending scheduling," R. 68-2 at 3, but nothing else happened. Bell claims that these defendants failed to respond to his cop-out and letter, and that they helped establish inadequate policies for employing, training, and supervising officers and employees of the prison. Bell filed suit less than one year after sending his letter, on June 2, 2010, so his claims against these defendants are safe from the statute of limitations.

---

[3] Bell also sent the cop-out and letter to Associate Wardens Batts and Linaweaver, but he does not oppose dismissing them from the case. R. 68 at 7 n.1.

7

### B. Claims barred by the statute of limitations

By contrast, Bell's claims against defendants Rosario, Cruz, Sloane, and Evans are too old. Dr. Rosario examined Bell in July 2008, suggested a "Priority!!!" biopsy, but then took no further action. R. 58 ¶ 6. In the complaint, Bell alleges that Rosario continued to see him after July 2008, but he has not presented any evidence these visits caused him additional injury. *Id.* ¶ 8.[4] Meanwhile, Cruz and Sloane allegedly granted the request for a biopsy in August 2008 without ensuring its performance. *Id.* ¶ 9. Bell also alleges these Rosario, Cruz, and Sloane helped establish inadequate policies for the medical care of Big Sandy inmates. *Id.* ¶¶ 8-9.

Unlike the first set of defendants, Bell's complaint reveals that he *did* discover these defendants' alleged deliberate indifference more than a year before filing suit. According to the complaint, in December 2008, Bell knew that "the mass in his right armpit still had not been biopsied," so he sought out an informal meeting with corrections counselor Evans. R. 58 ¶ 10. Bell therefore knew in December 2008 that he had suffered an injury at the hands of Defendants Rosario, Cruz, and Sloane.[5]

---

[4] At this point, the plaintiff simply has not presented the Court with sufficient evidence to withstand summary judgment. She has also not provided an affidavit as to what discovery may uncover. *See* Fed. R. Civ. P. 56(d). Maybe discovery would reveal that Dr. Rosario met with Bell repeatedly, knew of the lump, and continued to do nothing. On the other hand, it might reveal that Rosario only met with him once or twice years ago. The Court cannot speculate. Of course, the plaintiff still has ten days to save her claim.

[5] Bell argues that summary judgment is inappropriate against these defendants because the Court's limited discovery order did not allow her to depose them. R. 68 at 8. Again, if Bell expects that additional discovery would bolster her claims, she should file an affidavit under Fed. R. Civ. P. 56(d) to explain what evidence she would find and why that evidence would make summary judgment inappropriate.

8

Bell can preserve his claims against these defendants if his meeting with Evans stopped the statute-of-limitations clock. A prisoner temporarily halts—or "tolls"—the statute of limitations for deliberate indifference claims when he seeks redress through a prison's administrative remedies. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Bell's meeting with Evans was an informal step, colloquially known as a "BP-8 and a half," that was outside of the formal administrative remedy process. *See* Heffington Dep., R. 61-1 at 19-20; Inmate Handbook, R. 60-3 at 17 ("If an inmate cannot resolve a problem informally by contact with staff members . . . a formal complaint can be filed utilizing the Administrative Remedy Program."). Nevertheless, Bell was required to meet with Evans before he could file a formal complaint. *See* 28 C.F.R. § 542.13 ("[A]n inmate shall first present an issue of concern informally to staff . . . before an inmate submits a Request for Administrative Remedy"); Inmate Handbook, R. 60-3 at 17 (stating that Big Sandy inmates can only receive a form to file a formal complaint after first attempting informal resolution with a correctional counselor). This Court has previously held that a prisoner "began the exhaustion process" when he sought informal resolution of his complaint. *Winkelman v. John Doe #1*, 2007 WL 4139713, at *4 (E.D. Ky. Nov. 19, 2007); *see also Howard v. Mendez*, 304 F. Supp. 2d 632, 638 (M.D. Pa. 2004) (tolling time from when prisoner attempted informal resolution of his complaint until he exhausted his formal remedies from the statute of limitations). Bell's meeting with Evans marked the start of his pursuit of Big Sandy's administrative process, and therefore also started the tolling period for his statute of limitations.

9

But Bell's tolling period also ended. From the time a Big Sandy prisoner complains, he has twenty days to file a BP-9 form and begin the formal administrative process. Inmate Handbook, R. 60-3 at 17. This twenty-day period includes the mandatory attempt at informal resolution. *Id.* But Bell never filed a BP-9. *See* Martinez Decl., R. 27-2 at 2-3. Assuming Bell first complained on December 10, 2008, the day he met with Evans, he had until December 30 to begin the formal grievance process. By not pursuing a BP-9, Bell ended his pursuit of administrative remedies. *See, e.g.*, *Carr v. Hastings*, 2006 WL 2513745, at *2 (E.D. Ky. Aug. 29, 2006) (holding a prisoner ended his pursuit of administrative remedies when his informal resolution attempt received no answer and the prisoner did not file a BP-9). Bell's failure to file a BP-9 therefore also ended his tolling period.

As a result, the tolling period does not affect the validity of Bell's claims. He knew his injury from Rosario, Cruz, and Sloane accrued on December 10, the day he met with Evans. The next twenty days, while Bell could have pursued further administrative remedies, are excused. And then his statute-of-limitations clock began again on December 30, 2008. Because Bell filed his complaint in June 2010, the claims against these three defendants are too old and therefore time-barred. Also too old is the claim against Evans. By December 30, Bell should have known that his attempt at informal resolution had failed. His injury from Evans therefore accrued on that day, also placing it outside the statute of limitations period.

In a bid to rope all of his claims into the statute of limitations, Bell argues that each of the defendants' offenses were part of one "continuing violation" that ended in July 2009. R. 68 at 6-7. But Bell's claims are a series of related, yet discrete,

offenses against him and only him. This is not a "continuing violation." Instead, a continuing violation—something that "rarely" exists in civil rights suits—is an offense that results from a "longstanding and demonstrable policy" or a "standing operating procedure," injurious to a "class of which the plaintiff" is a member. *Sharpe v. Cureton*, 319 F.3d 259, 267-69 (6th Cir. 2003); *see Bruce*, 389 F. App'x at 466-67. Bell makes no argument in his response brief that the defendants committed a class-wide violation. The closest Bell comes to claiming an ongoing, class-wide policy are his allegations in the complaint that the defendants "established policies either formally or by custom for . . . the employment, training, supervision, and conduct of, the officers and employees of the Prison" and for the "medical care of inmates like the Plaintiff." R. 58 ¶¶ 3, 4. Yet Bell must show more than bare assertions to survive summary judgment, *see Celotex*, 477 U.S. at 324, and at this point, he has not done so. As a result, Bell's claims against Defendants Rosario, Cruz, Sloane, and Evans are time-barred and cannot proceed.

IV. **Defendants' personal involvement in purported offenses**

One of the remaining defendants—Heffington—says he should receive summary judgment because Bell has not shown he was directly involved in the purported violation.[6] This argument is unconvincing. At summary judgment, the Court draws all evidentiary inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and Bell has

---

[6] This defense could apply to all recipients of the cop-out. But Bell has not yet served Defendant Zuercher, and Bell has agreed to dismiss the claims against Defendants Batts and Linaweaver. R. 68 at 7 n.1. The other remaining defendant, DeOliveira, did not request dismissal on these grounds.

11

shown that Heffington could have received the letter Bell sent seeking help in July of 2009.  Heffington Dep., R. 61-1 at 19.  Other courts have found that receipt of a prisoner's letter is sufficient to create a factual question of whether those officials were deliberately indifferent to the prisoner's medical needs.  *See, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006); *Scribner v. Linthicum*, 232 F. App'x 395, 397 (5th Cir. 2007).  Heffington therefore cannot obtain summary judgment on this basis.

Heffington also argues that, as a prison official, he cannot be liable for failing to act on an administrative grievance.  R. 67-1 at 28.  On this point, he is partially right.  Prison officials cannot be liable as supervisors for denying or failing to act on inmates' administrative grievances, *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)), and Bell has alleged that Heffington failed to supervise the other prison officials who failed to act on the biopsy request.  R. 58 ¶ 3.  Bell's cop-out request, like his meeting with Evans, was a way of satisfying Big Sandy's informal resolution requirement before entering the formal administrative process.  *See* Evans Dep., R. 60-2 at 81-82 (stating an inmate can use a cop-out as an informal resolution attempt); Heffington Dep., R. 61-1 at 32-34.  Because the cop-out was a prerequisite to the administrative grievance process, Heffington cannot be liable for his failure to ensure that his subordinates acted on Bell's request.

But prison officials—even supervisors—can nonetheless be liable for their own failure to address inmates' requests for medical care.  A prison official who (1) is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" to an inmate and (2) "also draw[s] the inference" is liable for

deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Bell receives the benefit of all evidentiary inferences at this time, making summary judgment inappropriate. The cop-out and letter, which detailed Bell's belief that he had cancer, were objectively sufficient to inform Heffington that Bell faced a serious health risk. And whether Heffington actually knew of Bell's health problems is a question of fact. *Id.* at 842. Bell's claim against Heffington for his personal indifference can therefore proceed.

**V.     Bell's motion to compel information regarding Defendant Zuercher**

Lastly, Bell has filed a motion to compel production of Defendant Zuercher's personal information. R. 69. For over one year, Bell has been unable to serve Zuercher, the former warden of Big Sandy's satellite camp, with a summons and the complaint. Bell's attorneys claim they have been diligently attempting to serve Zuercher, and that his birth date and Social Security Number would help them find him. *Id.* The defendants, however, claim they do not have this information, and that even if they did, they would not be obligated to produce it. R. 70.

Other federal courts, when confronted with equally scarce defendants, have been reluctant to compel the production of sensitive personal information. *See, e.g.*, *Bennett v. CSX Transp., Inc.*, 2011 WL 4527430, at *7 (E.D.N.C. Sept. 26, 2011); *Eady v. Sawyer*, 2005 WL 2206249, at *16 (S.D. Ill. Sept. 12, 2005). Here, the Bureau of Prisons concedes that it possesses the last-known address of former employees, so there is no reason to compel more sensitive personal information. The defendants shall therefore provide Bell with Zuercher's last-known address so Bell can make a final attempt at service.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The motion to dismiss by Defendants **Batts, Cruz, Evans, Heffington, Linaweaver, Rosario,** and **Sloane**, R. 67, is treated as a motion for summary judgment under Rule 56. This motion is **GRANTED IN PART AND DENIED IN PART**.

    (a) Summary judgment is **GRANTED** in favor of Defendants **Batts, Cruz, Linaweaver, Rosario,** and **Sloane.** Summary judgment is also **GRANTED** with respect to Bell's claims against Defendant **Heffington** in his supervisory capacity.

    (b) Summary judgment is **DENIED** with respect to Bell's claims that Defendant **Heffington** was personally indifferent to the July 16, 2009 "cop-out" and letter.

    (c) Bell has until **November 10, 2011**, to present any evidence or arguments for why summary judgment is inappropriate on these claims. *See Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). If Bell believes additional evidence will present genuine issues of material fact, she should file an affidavit that identifies what evidence she expects to find through further discovery. *See* Fed. R. Civ. P. 56(d). If she needs more time, she should file a motion requesting more time and explain why she needs such time.

(2) Defendant **DeOliveira** did not move to dismiss or for summary judgment and remains in the case. Similarly, Defendant **Zuercher** has not yet responded to the complaint and also remains in the case.

(3) Bell's motion to compel production, R. 69, is **DENIED**. However, the defendants are **DIRECTED** to provide the last-known address for Defendant Zuercher to Bell no later than **November 10, 2011**.

This the 31st day of October, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge